Gardiner, Ch. J.
If our courts have failed to make the act abolishing imprisonment for debt consistent with itself, it is not for want of ingenuity, or of variety in their experiments for that purpose. The late chancellor applied to the law the maxim of his court, that among creditors equality was equity, and attempted to construe the act upon that principle; but, independently of other difficulties, this theory required the rejection of one positive provision of the law, and the substitution of another, besides convicting its framers of gross negligence, or gross ignorance. The late supreme court on the other hand assumed that the statute was ancillary to the common law, and was intended to furnish a remedy in behalf of prosecuting creditors in the nature of a statute execution, by which the concealed and equitable assets of the fraudulent debtor might be reached, and which, as the law then stood, could only be discovered and sequestrated through the aid of a court of chancery.
The court below occupy a middle ground. To a certain point in the statute, they hold that the remedy afforded must be in the name and is for the benefit of the prosecuting creditor; but after he has established the fraud for which the proceedings were instituted, the act leaves him to the mercy of an exasperated debtor, who by an assignment may deprive him of his preference, and compel him to share the fruits of the litigation with the creditors who were too wise or too indulgent to prosecute on their own account.
Whether the legislature intended this species of compulsory benevolence may be doubted; but no one can read the opinion of the learned court in the case now before us without a conviction that there is much in the letter of the statute to authorize the supposition. This court, however, in Spear v. Wardell, adopted the construction given to this act by the former supreme court, holding that the assignment of the debtor under the 16th and 17th sections was for the benefit, primarily of the creditor who instituted the proceeding, and not of *330 the creditors generally. (1 Comst., 144, 160.) The various provisions of the statute were then fully examined, so far as they bore upon the question of preference; and that case, in connection with those upon the same subject in the former supreme court, has given an exposition to the law which has since been acquiesced in, and acted upon by the profession. It would not be wise to depart from a rule thus settled, in reference to a law as vague as this is admitted to be, even if we were satisfied, which I certainly am not, that it was incorrect.
The only questions I feel myself at liberty to consider are, whether the plaintiff was the first who instituted proceedings against the debtor; and second, whether the circumstance of the defendants having obtained judgments and commenced proceedings under the act, before the assignment was executed, will entitle them to a pro rata distribution with the plaintiffs. And first, the judgment of the plaintiffs was in fact docketed some hours prior to those of the defendants, or any of them. Without, however, attaching any importance to this circumstance, and assuming that all were obtained at the same instant, the plaintiffs were the first who demanded of the debtor an appropriation of his equitable assets in payment of their judgment. He had ample means, and it was his duty then to have complied with that demand. His refusal the law pronounces a fraud, of which he was subsequently adjudged to be guilty. If he had made the appropriation, the plaintiffs would have obtained a preference in fact; this right to a present payment under the act was a preference in law, which, .it is clear, could not be affected, much less annulled, by the fraud of the debtor. I think that the rights of the plaintiffs were fixed by the demand, followed as it was by an immediate application for a warrant, its issue and delivery to the sheriff; all of which were prior to any similar proceeding upon the part of the defendants.
*331 Second. Are the defendants, or either of them, entitled to a pro rata dividend with the plaintiffs tinder the assignment ordered and executed by the debtor ? This question is, in truth, to some extent, dependent upon the one already considered. For if the plaintiffs, by their superior vigilance, gained a preference, they would not lose the light by the assignment. This is the fail if not necessary conclusion from the principle established in Spear v. Wardell (supra). It is true that the defendants are creditors by judgment, and there were none such in that case; but a light to a preference is not acquired by the commencement of a suit, or the obtaining of a judgment against the debtor, or by the commission by him of the frauds specified in the 4th section. In addition to these circumstances there must be some unequivocal act upon the part of the creditor, indicating his intention to avail himself of the provisions of the statute, as by a demand of payment under the second subdivision, or an application for a warrant for some one or all of the frauds enumerated in the other subdivisions of the fourth section. The right once acquired cannot be defeated by the debtor, either by preferring another creditor,by way of assignment or judgment, or by a trust created for the benefit of all his creditors (Wood v. Bolard, 8 Paige, 556; Spear v. Wardell, supra); nor by a voluntary payment. Had the judgments of the defendants equalled the amount of the debtor’s assets, in this case, he could not apply them upon those judgments to the exclusion of the plaintiffs, although a formal demand under the statute to that effect was made upon him. It would have been a fraud on his part; and the creditors accepting the appropriation, with knowledge of the plaintiffs' rights, would be held trustees for their benefit. This is the necessary result of the decisions to which I have referred, and is obvious from the provisions of the statute. First, the original prosecuting creditor acquires certain rights which no act of the debtor can impair. In this the chancellor, the former supreme *332 court and this court agree. The defendants then cannot claim through the debtor any right to his property to the prejudice of the plaintiffs, after their proceedings were instituted. Their claim to a pro rata distribution must rest exclusively upon the provisions of the statute. Now one privilege secured to the plaintiffs by the act was that of receiving from the debtor the full amount of their judgment, to the exclusion of the defendants, although it might require the appropriation of all his property. The defendants commencing proceedings subsequently possessed no such right. The debtor might have alleged, and proved the previous demand and application in justification of his refusal to comply with a similar demand on their part, upon the ground that his assets were only sufficient to discharge the first judgment. Otherwise the debtor has only to put himself in communication with other creditors after proceedings are commenced, as was done in this case, confess judgments and upon demand appropriate all his property to their payment, to exclude the creditor first prosecuting, not only from a preference but from all share in his assets. If I am correct in this, a preference is created by the statute in the outset. Second, the proceedings authorized by the first nine sections, and four of the five subdivisions of the tenth, are admitted to be of the same character. They are all in the name and for 'the benefit of the prosecuting creditor. By the first and second subdivisions of the tenth section, the debtor may pay, or secure the plaintiffs’ debt; and he may do this, although it requires the appropriation or pledge of all his property. But could he, rightfully, secure the second creditor by a pledge of all Ms assets to the exclusion of the first ? Such an act would be a gross fraud upon the law, whether we suppose a preference, or pro rata distribution to be its object; for it would defeat both, and leave to the debtor not merely an election to make an assignment, but practically to prefer any one of the creditors whom he could induce to prosecute. *333 According to the third subdivision of the same section, the debtor may avoid imprisonment by executing an inventory of his estate, and an account of his creditors, and an assignment of his property. So far it is conceded that the law regards the interest of the prosecuting creditor, but with this subdivision it is supposed that a change occurs in its whole spirit and object. Creditors are named, and it is asked why an account of them, if they are not interested in the subsequent proceedings ? The answer to this inquiry is found by reading this clause, in connection with the 6th article of the Revised Statutes relative “to imprisoned debtors,” to which “the account of creditors” must conform. (2 R. S., 31.) By that article, no creditors are to be mentioned but those who have charged the debtor in execution. According to the analogy of that article, the debtor in this case would at most be required to name the creditors by whom he was imprisoned, or who had instituted proceedings under the act, which would result in his imprisonment, unless arrested. Accordingly no notice whatever is necessary, when the assignment is made at the hearing, when the prosecuting creditors are in court; and when made after commitment, notice is to be served only on “ the plaintiffs by whom such defendant shall be prosecuted.” (§ 14.) The creditors who may oppose the discharge are those only who are entitled to notice, to dividends, and bound by the discharge if granted. Great reliance is placed upon the 18th section, by which the assignees are clothed with “the same powers over the assigned property, specified in the 8th article of the Revised Statutes (2 R. S., p. 40), and shall be subject to the same duties, obligations in all respects, and shall make dividends.” The 8th article contains provisions applicable to “ absent, concealed and non-resident debtors,” three insolvent laws, and an act in relation to prisoners confined in the state prisons. The “ rights and powers, the duties and obligations of the assignees,” under the several statutes, are radically *334 and irreconcilably different. According to the 3d, 4th and 5th articles, preferences are given to debts owing to the United States, and to the sureties of the debtor, and to those due from him as guardian, &c., and the debtor himself is entitled to five per cent on the amount of his indebtedness, where the dividend exceeds seventy per cent. By the 6th article the prosecuting creditors are only to be paid, and the surplus goes to the debtor. These are examples of what may be found more at large in the 8th article. The presumption undoubtedly is, that the legislature understood what they intended by this reference; if so, the knowledge did not survive their dissolution.
From this chaos of conflicting rights and duties, we are driven back to the act in question, to ascertain who are entitled to dividends, and in what order they are to be paid. And first, the effect of the discharge, partial as it is, is limited to a particular class of creditors (§ 17), and no others are interested. Second, all creditors by contract are not included in this class. The 25th section excludes all debis not exceeding fifty dollars, and although in the aggregate they may constitute nine-tenths of the indebtedness, the creditors take nothing under the assignment. Third, all creditors, upon whom notice by the 14th section must be personally served, are entitled to dividends, and perhaps those, who have commenced suits in courts of record upon contract against the debtor, may also be included by implication from the 12th section.. But this does not prove that those who may claim dividends are to share ratably. We are not to look for equality in a statute which confessedly begins with a preference and ends by excluding, it may be, two-thirds of the creditors from all participation in the assigned property. If it was an insolvent law, such a distribution would be repugnant to every principle of justice, but it is entirely consistent, if considered as a remedy for prosecuting creditors. The assignees are “'to make dividends,” and the duty is performed, whether the *335 plaintiffs can rightfully receive the whole or a part of their judgment. The word dividend does not necessarily imply a pro rata distribution. There may be but a single prosecuting creditor, or one of any kind, having a demand over fifty dollars ; he is not to lose the benefit of the act, his dividends and his debt, because there is no one to share with him. The word occurs in all our insolvent laws, and all of them give preference to debts of certain description. They prescribe the mode of distribution. This act is silent on that subject; or if it speaks by reference, it is in a language that no one can comprehend or expound. We are, therefore, left to infer from its other provisions and the general objects of the statute, the legislative will on the question. What that purpose was has been settled., as I think correctly, by the various decisions to which I have referred. The principle thus established must, in the absence of a special provision, control in the construction of the statute upon the question of distribution.
The result of the matter is, that the plaintiffs obtained the prior right to an appropriation by the debtor of his property, or so much as was necessary to satisfy their demand. The correlative obligation of the debtor continued through all the proceedings to the time of the assignment. So much is conceded. The court below were of opinion that the creation of that trust not only exempted the debtor from imprisonment, but discharged the obligation also. We think the duty remained, and that the assignment was the means provided by law for its performance. The plaintiffs are, therefore, to be preferred to the extent of their judgment, and the other prosecuting creditors are to be paid from the surplus of the assigned property, in the order of time in which the demand for an appropriation of the debtoi’s property was made by them respectively and refused.
The judgment of the supreme court must be reversed, and that of the special term affirmed.
*336 Ruggles, Johnson, Dean and Crippen, Js., concurred in the foregoing opinion.
Denio, Hand and Marvin, Js., dissented, and were in favor of affirming the judgment of the supreme court at general term.
Judgment reversed.